UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ARIANNA CHAVEZ, § § Plaintiff § § v. § § CITY OF AUSTIN and JOHN DOE, § § Defendants § § § | CAUSE OF ACTION: 1:20-cv-01174 |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiff Arianna Chavez brings this 42 U.S.C. § 1983 case against the City of Austin and Austin Police Department Officer John Doe for the brutal and excessive force they inflicted on her as she was peacefully exercising her right to peaceably assemble and protest and was doing absolutely nothing wrong.

### I.  PARTIES

1. Plaintiff Arianna Chavez is a resident of Travis County, Texas.

2. Defendant, CITY OF AUSTIN, is a municipality that operates the Austin Police Department and may be served through its City Clerk at 301 W. 2nd Street, Austin, TX 78701. The City's policymaker for policing matters is Police Chief Brian Manley. *Service is hereby requested at this time.*

3. Defendant John Doe is a police officer with the Austin Police Department, and is sued in his individual capacity for compensatory and punitive damages. He can be served with process at 715 E. 8th Street, Austin, Texas, 78701. At all relevant times, John Doe was acting under color of law as an Austin Police Department officer.

## II. JURISDICTION AND VENUE

4. As this case is brought pursuant to 42 U.S.C. § 1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. This Court has general personal jurisdiction over Defendants as they reside and/or work in Travis County, Texas.

6. This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct by Defendants that injured Plaintiff Arianna Chavez, and which occurred in Travis County, Texas, which is within the Western District of Texas.

7. Venue of this cause is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Travis County, which is within the Western District of Texas.

## III. FACTS

8. On May 31, 2020, Arianna Chavez went downtown to participate in a demonstration against police brutality because police officers had unreasonably killed George Floyd and Michael Ramos.

9. Instead of permitting her to peacefully protest, an APD officer shot her in the back of the head with a dangerous projectile.

10. Chavez posed no threat to anyone at any time prior to being shot.

11. She was unarmed.

12. She was doing nothing that could conceivably be perceived as threatening to anyone.

13. She was not even facing the officer.

14. She was completely and totally innocent.

15. Despite this, APD Officer John Doe inexplicably and unreasonably shot her in the back of the head with a dangerous projectile.

16. The shot knocked Chavez to the ground and caused her to suffer a serious head wound, head trauma, and a concussion.

17. Tragically, Chavez was just one of many innocent people APD officers used excessive force against on May 30 and May 31 who were doing nothing more than speaking out against police violence.

18. In fact, on May 30, 2020, APD overreacted numerous times and used chilling, excessive force on multiple individuals, including, among others, Jason Gallagher, Levi Ayala, Jose Herrera, and Steven Arawn.

19. While numerous people had been injured by APD, including several who had suffered head injuries from projectiles fired by APD on May 30, 2020, rather than correct this unconstitutional behavior by his officers that he was aware of, Chief Manley and his senior leadership authorized APD to continue to fire dangerous projectiles at innocent people and into crowds on May 31, 2020 as well.

20. As a consequence, in addition to Chavez, the APD and its officers shot, victimized, and injured numerous other defenseless individuals with dangerous projectiles on May 31, 2020.

21. One of the many innocent individuals APD shot in the head was Justin Howell, a twenty-year-old Black student who had done nothing wrong and was merely exercising her clearly-established First Amendment rights.

22. In fact, APD Chief of Police, Brian Manley admitted Howell had done nothing wrong.

23. Consequently, police used excessive force against Howell.

24. Incredibly, an APD officer also shot a civilian medic, Maredith Drake, with a projectile while she had her hands up and was simply trying to get the severely injured Howell to safety. The shot severely injured Drake.

25. Thus, police used excessive force against Drake.

26. And police used excessive force against Plaintiff Chavez.

27. Upon information and belief, when Doe shot Chavez, he was also substantially motivated by his opposition to the demonstrators' message that police violence must end.

28. Moreover, APD officers have engaged in a pattern of employing excessive force against unarmed minorities over the last several years.

29. Among others, these include (but are by no means limited to) excessive force used against Jesus Hernandez, Pete Hernandez, Sir Smith, Carlos Chacon, and Braion King, as well as the killings of David Joseph, Larry Jackson, Jr., Kevin Brown, Byron Carter, Ahmede Bradley, Jason Roque, Nathan Sanders, Daniel Rocha, and Michael Ramos, all of whom were unarmed when killed.

30. In fact, a 2016 study by the Center for Policy Equity found that APD disproportionately used force against people of color.

31. During this same time period, a high-ranking APD commander, Justin Newsom, who is white, regularly used invidious racial slurs. Among many other disgusting comments, Newsom referred to former President Barack Obama as "n----- one," to a former Black city councilwoman as a "dumb n-----," and to a former Black assistant police chief as "a n-----, but our n-----." When Newsom's disgusting comments came to light, rather than discipline him, Chief Manley quietly allowed him to resign.

32. Further indicative of APD's failure to remedy its discriminatory practices is a 2020 analysis of city traffic data that found that black motorists comprise 25% of APD's arrests despite representing only 8% of its population.

33. In any event, Doe's attack on Chavez (*i.e.* – shooting her with a dangerous projectile) was unreasonable.

34. Moreover, the attack would chill a person of ordinary firmness from continuing to engage in protected speech and assembly.

35. Numerous APD officers watched Doe shoot Chavez, but not one officer intervened to stop the outrageous shooting, just as no one intervened to stop the prior shootings.

36. After she was shot, Chavez went to the emergency room at Dell Seton.

37. Upon information and belief, Doe has not been disciplined by APD for using excessive force against Chavez. Likewise, upon information and belief, neither Chief Manley nor any of Doe's supervisors have been disciplined for tolerating, authorizing, or endorsing this type of despicable and unconstitutional conduct.

38. This lack of discipline as to senior leaders and Manley himself is all the more shocking as Chief Manley agrees that numerous individuals were victims of excessive force by APD officers on May 30 and May 31.

39. Moreover, APD Chief of Police, Brian Manley, adopted policies that authorized or tolerated this unreasonable, unnecessary and brutally excessive force even though Chief Manley had long known of the dangers of firing projectiles into crowds and at defenseless persons, and was actually aware that projectiles fired from shotguns had been unreasonably used multiple times on May 30, 2020 and multiple times again on May 31, 2020 prior to the attack on Chavez. Despite

this, and Manley's awareness of the severe injuries caused by them, APD policies – and Manley – authorized their continued use.

40. Chief Manley knew, as any reasonable policymaker capable of rational thought would also know, that as a direct consequence of such practices, innocent people like Plaintiff would be injured and victimized, and their constitutional rights violated.

41. And, in fact, numerous other people suffered severe and devastating injuries as a result of APD's practices and excessive force on May 30, 2020 and May 31, 2020.

42. According to Dell Medical Center's physicians, seven victims required surgical interventions and four victims retained portions of the "beanbag" shotgun rounds in their bodies/heads.

43. More particularly, victims suffered intercranial hemorrhages, depressed skull fractures, depressed frontal bone fracture, concussions, fractured jaws and brain damage.

44. After ignoring the pattern of excessive force that preceded the attack on Chavez for several more days, multiple members of the City Council called for Manley to be removed as APD's Chief of Police.

45. Following the calls to remove him, Chief Manley acknowledged the obvious, the policies at Austin Police Department concerning the use of bean bag shotguns were dangerously flawed and he agreed to change them – a change any reasonable policymaker should have known to have made prior to Plaintiff being shot.

### IV. CAUSES OF ACTION

#### A. FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE – AS TO DEFENDANT JOHN DOE

46. APD Officer John Doe, while acting under color of law, used excessive force on Arianna Chavez when she posed no danger to anyone.

47. APD Officer John Doe's use of force was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly caused Plaintiff Chavez to suffer serious injuries. Therefore, APD Officer John Doe violated Chavez's clearly established Fourth Amendment right to be free from excessive force and unreasonable seizure.

48. As a direct and proximate result of APD Officer John Doe's actions, Chavez suffered and continues to suffer significant injuries.

### B.  FIRST AMENDMENT RETALIATION – AS TO DEFENDANT JOHN DOE

49. Plaintiff incorporates the preceding paragraphs as if alleged herein.

50. The First Amendment's protections for free speech and assembly prohibit agents of the government from subjecting an individual, like Chavez, to retaliation for engaging in protected speech rights.

51. Chavez exercised her free speech and assembly rights by attending the demonstration against police violence.

52. Upon information and belief, Doe's use of force against Chavez was substantially motivated by his disagreement with the content of Chavez' speech. Upon information and belief, Doe shot Chavez with the beanbag shotgun substantially because Doe disagreed with Chavez' right to assemble and/or her protected speech.

53. In addition, Chavez was yet one more unarmed minority senselessly injured by APD's use of excessive force. Among others, these include Anthony Evans, Levi Ayala, Bomani Barton, and Justin Howell.

### C.  PUNITIVE/EXEMPLARY DAMAGES – AS TO DEFENDANT JOHN DOE

54. Plaintiff incorporates the preceding paragraphs as if alleged herein.

55. Defendant's conduct was egregious, reckless, and endangered countless community members. Plaintiff seeks punitive damages as well to deter future uses of such excessive force.

### D. FIRST, FOURTH AND FOURTEENTH AMENDMENT § 1983 *MONELL* CLAIM – AS TO DEFENDANT CITY OF AUSTIN ONLY

56. Plaintiff incorporates the preceding paragraphs as if alleged herein.

57. The City of Austin, had the following policies, practices, or customs in place when APD Officer John Doe unreasonably shot Plaintiff Chavez:

   a. Shooting kinetic projectiles into crowds where innocent people could be injured;

   b. Using, authorizing, and/or tolerating excessive force against non-violent protestors;

   c. Shooting people with kinetic projectiles in the head;

   d. Failing to adequately discipline officers;

   e. Failing to adequately supervise officers;

   f. Failing to adequately train officers concerning de-escalation of force, crowd control, use of force against non-violent protestors, and the use or misuse of kinetic projectiles

   g. Failing to train officers regarding demonstrators' free speech and assembly rights;

   h. Not intervening to stop constitutional violations, including excessive force;

   i. Failing to train or instruct officers about specific incidents it considers unreasonable, excessive force, or in violation of the Constitution;

   j. Disproportionately using and tolerating excessive force, including deadly force, against unarmed people of color; and

   k. Using expired munitions.

58. Each of the policies, practices, or customs delineated above was actually known, constructively known and/or ratified by City of Austin and Chief of Police, Brian Manley, and was promulgated with deliberate indifference to Chavez' First, Fourth and Fourteenth Amendment rights under the United States Constitution. Moreover, the known and obvious consequence of

these policies, practices, or customs was that Austin Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

59. Consequently, the policies delineated above were a moving force of Plaintiff's constitutional deprivations and injuries, and proximately caused severe damages.

60. Moreover, Chief Manley and senior level APD superiors knew that multiple officers had violated individuals' right to speech and assembly, and had used excessive force at the protests the day before and earlier on May 31. As a consequence of them not stopping the abusive tactics, they caused numerous people, including Plaintiff, to suffer serious injuries. Thus, they condoned and ratified the abuse. Moreover, the City and its leadership, including Chief Manley, is aware through court findings, litigation, video footage, and investigations of a pattern of racism and disproportionate and excessive force used against minorities by APD officers. Accordingly, the City is also liable directly for its policymakers' misconduct and failure to adequately supervise, train, and stop APD officers from using excessive force and violating protestors' first amendment and equal protection rights, which was a proximate cause of Plaintiff's deprivation of rights and injuries.

61. Plaintiff Chavez brings this claim pursuant to 42 U.S.C. § 1983.

## V. Damages

62. Plaintiff Chavez seeks the following damages:

    a. Past and future medical expenses

    b. Past and future economic damages, including (but not limited to) loss of earning capacity;

    c. Past and future physical pain and mental anguish;

    d. Past and future impairment;

    e. Past and future disfigurement;

    f. Exemplary/Punitive damages as to Defendant Doe; and

    g. Attorneys' fees pursuant to 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

63. To right this injustice, Plaintiff requests the Court:

    a. Award compensatory damages against the City of Austin, and compensatory and punitive damages against the individual Defendants, including APD Officer John Doe;

    b. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

    c. Award pre-judgement and post-judgment interest at the highest rate allowable under the law; and,

    d. Award and grant such other just relief as the Court deems proper.

Dated: November 25, 2020

        Respectfully submitted,

        **EDWARDS LAW**
        1101 East 11th Street
        Tel.  512-623-7727
        Fax.  512-623-7729


        By /s/ *Jeff Edwards*
        JEFF EDWARDS
        State Bar No. 24014406
        jeff@edwards-law.com
        SCOTT MEDLOCK
        State Bar No. 24044783
        scott@edwards-law.com
        MIKE SINGLEY
        State Bar No. 00794642
        mike@edwards-law.com
        DAVID JAMES
        State Bar No. 24092572
        david@edwards-law.com

        Tycha Kimbrough
        Kimbrough Legal, PLLC
        tycha@kimbroughlegal.com
        P: 833-553-4251

        **ATTORNEYS FOR PLAINTIFF**